## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAMIAN CABAN,** | : | **No. 3:18cv1013** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| **CHARLES BALOGH, Individually and** | : | |
| **in his official capacity as a** | : | |
| **Luzerne County Detective, and** | : | |
| **THE OFFICE OF DISTRICT** | : | |
| **ATTORNEY OF LUZERNE COUNTY,** | : | |
| **Defendants** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## <u>MEMORANDUM</u>

Before the court for disposition is the motion for summary judgment filed by the defendants, Charles Balogh and the Office of the District Attorney for Luzerne County.  The parties have briefed their respective positions, and the motion is ripe for disposition.

**Background**

The instant case involving, *inter alia,* allegations of malicious prosecution and false arrest, is based upon events that began on the evening of December 19, 2015.  (<u>See generally</u>, Doc. 1, Compl.).[1] That night, some sort of interaction

---

[1] Although the court is addressing a summary judgment motion and should move beyond the pleadings to determine whether any questions of material fact exist, it is helpful to cite to the plaintiff's complaint to present a clear picture of his claims.

occurred between Plaintiff Damian Caban and his ex-fiancée, Janelle Skipalis. (Id.)  The interaction led to criminal charges being pressed against plaintiff.  (Id.) The parties have different views of the December 19th incident.

Plaintiff indicates he had been romantically involved with and engaged to be married to Skipalis, but she had recently called off the engagement.  (Doc. 1, Compl. ¶ 15).  He arrived at Skipalis's residence in Hanover Township, Pennsylvania on the date in question to retrieve certain personal property, including a two-and-a half carat diamond engagement ring worth $26,000.00, which he had given Skipalis.  Plaintiff entered the residence through the open backdoor, and Skipalis ended up assaulting him.  (Doc. 29-1, Pl.'s Ans. to Interr. at 6; Doc. 1, Compl. ¶ 14, Doc. 29-3, Pl. Exh. C, Pl.'s Dep. at 27-28).[2]

Skipalis, on the other hand, indicates that plaintiff arrived at her backdoor, and she told him to go away. (Doc. 24-1, at 13-14, Skipalis' Written Stmt.). Instead of leaving or entering through the backdoor, plaintiff attempted to enter through the kitchen window and forcefully tried to remove the ring from Skipalis's finger.  (Id.) Also present at the time was Skipalis's three-year old child. (Id.) Skipalis eventually contacted her mother and told her to come to the residence. Her mother contacted Skipalis's uncle, Defendant Charles Balogh, and he, along

---

[2] For clarity, when citing to the record, the court will utilize the page numbering located in the upper right-hand corner of the document.

with Skipalis's mother, father and Skipalis's sister-in-law evidently arrived on the scene.  (Doc. 24-4, Def. Exh. D, Skipalis Dep. at 9).

Eventually, Defendant Balogh called 911 and members of the Hanover Township Police Department arrived. (See generally, Doc. 24-1, Records of Hanover Township Police).  Patrolman Thomas Farver of the Hanover Township Police Department arrested plaintiff and charged him with Criminal Trespass, Simple Assault and Harassment.  (Doc. 24-1, 24-28, Police Crim. Compl.).   At the plaintiff's preliminary hearing, Farver filed a superseding criminal complaint adding two more charges, simple assault naming Skipalis's son as the victim, as well as a single charge of recklessly endangering another person -Skipalis. (Doc. 24-7, Def. Exh. G).

Plaintiff maintained his innocence and a jury trial was held in Luzerne County Court of Common Pleas.  (Doc. 24-3, Def. Exh. C, Jury Trial Transcript). The jury found plaintiff not guilty on all charges.  (Id.)

Subsequent to his acquittal on the charges, plaintiff filed the instant case. The complaint is comprised of the following four counts:  1) Malicious prosecution against Defendant Balogh and Defendant Office of the District Attorney of Luzerne County, under the Fourth Amendment and 42 U.S.C. § 1983[3]; 2) False

---

[3] Plaintiff asserts a constitutional claim against a state actor, thus his claim falls under 42 U.S.C. § 1983 (providing that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or

Arrest against Defendant Balogh and Defendant Office of the District Attorney of Luzerne County, under the Fourth Amendment and 42 U.S.C. § 1983; 3) Failure to Train and Supervise against Defendant Office of the District Attorney of Luzerne County under 42 U.S.C. § 1983; and 4) Defamation against Defendant Balogh and Defendant Office of the District Attorney of Luzerne County under Pennsylvania state law.  (Doc. 1, Compl.).

The plaintiff's case centers on the fact that Skipalis's uncle, Defendant Charles Balogh served as a Luzerne County Detective.  He arrived at the scene of the incident before the police, and in fact, telephoned 911.  Generally, plaintiff claims Defendant Balogh, with malice, urged the arrest of plaintiff without proper investigation and without probable cause.  (Doc. 1, Compl. ¶ 29).  Plaintiff asserts that Defendant Balogh had a duty to determine whether probable cause existed for plaintiff's prosecution, and he did not do so.  (Id. ¶¶ 31-32).  Plaintiff further avers that Defendant Balogh knew that Skipalis lied about the event and sought to protect and favor his niece by charging plaintiff without probable cause and by ignoring exculpatory evidence.  (Id. ¶¶ 47-48)

---

causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . ..").

4

On April 30, 2021, the defendants moved for summary judgment. The parties have briefed their respective positions, bringing the case to its present posture.[4]

**Jurisdiction**

Plaintiff filed Counts I, II, and III pursuant to 42 U.S.C. § 1983, and Count IV is a Pennsylvania state law cause of action.  As plaintiff brings suit pursuant to 42 U.S.C. § 1983, we have federal question jurisdiction.  See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").  We have supplemental jurisdiction over the plaintiff's state law claim pursuant to 28 U.S.C. § 1367.

**Standard of review**

Granting summary judgment is proper "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  See Knabe v. Boury Corp., 114 F.3d 407, 410 n.4 (3d Cir. 1997) (quoting FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for

---

[4] The Honorable Robert D. Mariani transferred this case to the undersigned on November 7, 2023.

summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. <u>Int'l Raw Materials, Ltd. v. Stauffer Chem. Co.</u>, 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. <u>Anderson</u>, 477 U.S. at 248. A fact is material when it might affect the outcome of the suit under the governing law. <u>Id.</u> Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. <u>Id.</u> at 324.

**Discussion**

Defendants move for summary judgment on all four counts of plaintiff's complaint. The court will address each in turn.

**I. Count I- Malicious Prosecution**

Count I of plaintiff's complaint asserts a cause of action against both defendants for malicious prosecution under the Fourth Amendment to the United States Constitution.

To establish such a claim of malicious prosecution, the plaintiff must establish the following elements:

(1) the defendants initiated a criminal proceeding;

(2) the criminal proceeding ended in plaintiff's favor;

(3) the proceeding was initiated without probable cause;

(4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and

(5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003).

Defendants argue that plaintiff cannot meet at least two of these requirements, that the defendants initiated a criminal proceeding and that the

7

proceedings were initiated without probable cause.   The court will address these issues *seriatim*.

## A) Initiation of criminal proceedings

The first element of a malicious prosecution claim is that the defendants initiated a criminal proceeding against the plaintiff.  Id.  Here defendants argue that they did not initiate proceedings against the plaintiff.  Rather, Patrolman Thomas Farver of the Hanover Police Department initiated the proceedings.

Supporting defendants' position is the fact that Patrolman Farver issued both the original criminal complaint and the superseding criminal complaint. In further support of their position, defendants[5] present several depositions. Farver testified at his deposition that the criminal charges he lodged against plaintiff were his (Farver's) decision and neither Defendant Balogh nor Defendant Luzerne County District Attorney's Office played any role in the decision to charge plaintiff or in deciding the particular crimes charged.  (Doc. 24, Exh. B, Farver Dep. at p. 11).   He testified at his deposition: "I never spoke to [Defendant Balogh] the night of the incident about the charges nor after."  (Id.) He also indicates that the Office of District Attorney did not attempt to place any

---

[5] The heading of Count I of plaintiff's complaint indicates that Count I is pressed against both defendants. The substance of Count I, however, focuses solely on the actions of Defendant Balogh and does not mention Office of the District Attorney.  Accordingly, the court will address only Defendant Balogh with regard to Count I.

8

pressure on him or have any input in the decision to charge plaintiff aside from the fact that, any time a felony charge is involved, an Assistant District Attorney must approve the charge.  (Id.)

Additionally, Defendant Balogh testified at his deposition that he did not have any discussion with Patrolman Farver about filing criminal charges against plaintiff. (Doc. 24-6, Exh. F (mistakenly marked Exh. E) Def. Balogh Depo. at 28).  He also testified that he did not discuss filing charges with the district attorney's office.  (Id. at 29).  He went to Skipalis's home as a family member not as a county detective or law enforcement officer.  (Id. at 29-30).

On the night of the arrest, the alleged victim, Skipalis, provided a written statement to Farver for investigatory purposes and in determining whether probable cause existed for plaintiff's arrest.  Skipalis indicated at her deposition that Defendant Balogh had no input into the written statement she made. (Doc. 24-4, Skipalis Dep. at 15).  In other words, Defendant Balogh had nothing to do with its substance.  (Id. at 15-16).  The parties do not dispute that Balogh did, however, sign it as a witness.  According to Skipalis, Defendant Balogh had no input into the formulation of the charges against plaintiff on the night of the incident or at the preliminary hearing.  (Id. at 15).

Thus, defendant has presented evidence in the form of the testimony of three witnesses that Defendant Balogh did not influence Patrolman Farver in

9

filing the charges.   Accordingly, he moves for summary judgment on the malicious prosecution charge on the basis that he did not initiate the criminal charges.

Plaintiff has no direct evidence to counter the defendants' evidence. Rather, plaintiff argues that a jury could decide from the circumstantial evidence that Defendant Balogh influenced Farver in charging plaintiff. Plaintiff's position is that "[i]t is undisputed that Patrolman Farver of the Hanover Police Department was listed as the prosecuting officer concerning the charges propounded against the Plaintiff, Damian Caban.  However, the Plaintiff's theory of the case is that Charles Balogh, a Luzerne County Detective, used his influence and position to have criminal charges prosecuted by the Plaintiff."  (Doc. 28, Pl. Oppo. Br. at 13).

Plaintiff alleges that Balogh arrived on the scene before the police did, made the 911 call, and signed the written statement drafted by Skipalis.  He also attended the preliminary hearing.  All of which, plaintiff argues, can circumstantially establish that Balogh had a role in charging him.  Per plaintiff, Defendant Balogh's motive for maliciously prosecuting him is "in favor of his niece's need to keep a $26,000.00 diamond ring that the Plaintiff wanted returned to him."  (Doc. 28, Pl.'s Oppo. Br. at 18).   Moreover, according to the

plaintiff, Defendant Balogh lied during these proceedings, thus impeaching his credibility.   After a careful review, the court finds that plaintiff has not provided sufficient evidence, direct or circumstantial, to raise a genuine issue of material fact as to whether Defendant Balogh initiated the criminal proceedings against plaintiff.

First, it is not in dispute that Defendant Balogh is a Luzerne County detective, and he is the uncle of the alleged victim Skipalis.  Also undisputed is that he arrived at the scene prior to the police and in fact initiated the telephone call to 911.  These facts alone, however, do not give rise to an inference that he initiated the criminal charges himself or influenced Patrolman Farver to initiate the charges.  Plaintiff alleges that Defendant Balogh knew that Skipalis had a $26,000 diamond ring given to her by plaintiff which she "needed" to keep.  He presents no evidence of these facts at all, and nothing from which a jury could infer these facts.

To bolster his case, and counter defendants' direct evidence, plaintiff provides a statement he made at his deposition that Defendant Balogh told him at some point in the past that the only time he (Defendant Balogh) would ever be in jeopardy to lose his job could be because of the things he did for his niece Skipalis.  (Doc. 29-3, Pl. Exh. C, Pl.'s Dep. at 16-17).

Plaintiff also alleges that Defendant Balogh lied at his deposition, thus casting doubt on anything he said.  This alleged lie is that Defendant Balogh testified that he left Skipalis's residence on the night in question "as soon as the Police arrived," which plaintiff argues is clearly a lie because Balogh signed the victim's statement as a witness.  (Doc. 28, Pl. Oppo. Br. at 15). Plaintiff's argument is unconvincing.

Defendant Balogh did not testify he left "as soon as the Police arrived," rather he testified as follows: "I left when - - I mean, when the police got there, I left - - I left before anyone else.  I was the first one to leave."  (Doc. 24-6, Exh. F (marked Exh. E) Def. Balogh Depo. at 27).  Plaintiff argues that Defendant Balogh's credibility is low because he witnessed the victim's statement, which demonstrates that he stayed longer than he indicated.  Plaintiff points to nothing in the record, however, as to when the victim wrote her statement so as to raise an inference that Defendant Balogh was untruthful.  The statement may have been written, and witnessed by Defendant Balogh, before the police arrived or immediately upon the police arriving.  Further, plaintiff fails to present evidence from which the jury could infer that any of the police left before Defendant Balogh left.  Thus, this testimony from Defendant Balogh does not raise a genuine issue of material fact, and plaintiff has not met his burden of countering defendants' summary judgment evidence.

Moreover, credibility is an important issue in every case.  In the summary judgement context, however, a party may not "prevail merely by discrediting the credibility of the movant's evidence; it must produce some affirmative evidence." Big Apple BMW, Inc. v. BMW of N. Amer., Inc., 974 F.2d 1358, 1363 (3d Cir.1992); see also FED. R. CIV. P. 56(e) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: . . . consider the fact undisputed for purposes of the motion . . .  grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it[.]")

The non-moving party cannot rest on mere pleadings or allegations; rather it must point to actual evidence in the record on which a jury could decide an issue of fact its way. Berckeley Inv. Group, Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006) ("In this respect, summary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument.").  Thus, even if plaintiff had discredited Defendant Balogh, it would not be sufficient to counter the defendants' evidence.

Plaintiff has not presented sufficient evidence to establish that a genuine issue of material fact exists for trial on the issue of who initiated the criminal charges. Patrolman Farver initiated them according to the evidence of record, and a jury would have to engage in improper speculation to find in plaintiff's favor. Accordingly, summary judgment is appropriate in defendants' favor on Count I of plaintiff's complaint alleging malicious prosecution.

## B) Probable Cause

"In an action for malicious prosecution after an acquittal, a plaintiff must show that the criminal action was begun without probable cause for charging the crime in the first place[.]" Hartman v. Moore, 547 U.S. 250, 258 (2006). Here, even if plaintiff had raised a genuine issue of material fact with regard to whether Defendant Balogh initiated the criminal proceedings, the malicious prosecution claim would still fail because probable cause supports the charges at issue.

The court may decide at the summary judgment stage that probable cause existed when the evidence, viewed in the light most favorable to the plaintiff, "reasonably would not support a contrary factual finding." Sherwood v. Mulvihill, 113 F.3d 396, 401 (3d Cir. 1997). To determine whether probable cause exists the court examines the facts in a "commonsense" totality of the circumstances approach. Illinois v. Gater, 462 U.S. 213, 230 (1983).

14

"Probable cause exists whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested." United States v. Myers, 308 F.3d 251, 255 (3d Cir. 2002) (quoting United States v. Glasser, 750 F.2d 1197, 1206 (3d Cir. 1984). "A police officer may be liable for civil damages for an arrest if 'no reasonable competent officer' would conclude that probable cause exists." Wilson v. Russo, 212 F.3d 781, 786 (3d Cir.2000) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).  Here, ultimately, a jury acquitted plaintiff of the charges.  This fact, however, is not relevant to the probable cause analysis.  Wright v. City of Philadelphia, 409 F.3d 595, 602 (3d Cir.2005) (citing Michigan v. DeFillippo, 443 U.S. 31, 36 (1979)).

Defendants argue that Officer Farver possessed probable cause for the arrest of plaintiff based upon the statement provided by the alleged victim Skipalis.  On the night in question, Skipalis provided a written statement which described the incident as follows:

> I, Janelle Skipalis was sleeping on my couch when Damian Caban came knocking on my door.  I said I didn't want to talk tonight, he kept knocking, I ignored him . . .  then I heard him trying to get inside so I ran to the kitchen and he had my window above my kitchen sink open trying to crawl in.  I tried to push him out and he grabbed my hair/head and preceeded [sic] to come in and throw me to the ground and tried ripping my ring off my finger.  I began screaming

15

> telling him he is hurting me and my son is here he said he doesn't care that he is gonna kill me & this is gonna end tonight . . . My son came over crying so I begged for him to stop eventually he did then he took my phone so I couldn't call anyone.  I tried to run out of my front door and he chased us and slammed the door then thru [sic] us on the ground and tried to take the ring and phone again I ran into kitchen and tried to talk to him and calm him down then thankfully my [mom] called and [I] told her and my dad to hurry and get here.

(Doc. 24-1, Def. Exh. A, Hanover Twp. Police Dept. Records at 12-13).

Patrolman Farver provided a narrative statement on the same day describing the incident as follows:

> On Saturday, December 19th, 2015 at approximately 2125 hours the Hanover Township Police Department were dispatched through Luzerne County 911 to respond to 40 Scureman Street, Hanover Township, Pa for a reported domestic assault where a male had forced his way into the residence.
>
> Upon arrival this officer was met by Janelle Skipalis (victim) who informed responding police that a male, her boyfriend, DAMIAN CABAN forced his way into her residence after refusing him entry at the backdoor.
>
> Details are CABAN arrived at the residence of 40 Scureman Street to speak with his girlfriend Janelle Skipalis.  CABAN knocked at the backdoor but Skipalis refused entry and told CABAN to leave her property. CABAN then forced his way through a rear kitchen window. Skipalis tried to stop CABAN from entering at which time he grabbed her by the head and hair while continuing to force his way into the house.  During this struggle Skipalis received injury to her head, face and lip area.  Skipalis then contacted family member who called 911.

16

Police responded and identified DAMIAN CABAN by his Pennsylvania Drivers License.  Skipalis provided police with a written statement of this incident.  Police observed blood on the living room carpeting from CABAN's finger which was injured when forcing his way through the kitchen window.  Skipalis was observed to have red marks on her upper body (head and neck area) and a cut to her lip.

CABAN was arrested for Criminal Trespass, Simple Assault and Harassment.

CABAN was transported to LCCF for overnight arraignment.

(Doc. 24-1, Def. Ex. A at 5).

Farver obtained from Skipalis all the information which he set forth in his narrative statement and which he used to establish probable cause.  (Doc. 24-2, Def. Ex. B at 14).  Balogh provided no input into the Affidavit of Probable Cause. (Id.)  Plaintiff made no statement to Farver that night.  (Id. at 20).

Generally, "[w]hen an officer has 'received his information from some person – normally the putative victim or an eye witness – who it seems reasonable to believe is telling the truth,' he has probable cause." Gramenos v. Jewel Cos., 797 F.2d 432, 439 (7th Cir. 1986), cert denied, 481 U.S. 1028 (1987), cited with approval, Merkle v. upper Dublin Sch. Dist., 211 F.3d 782 (3d Cir. 2000).

"Independent exculpatory evidence or substantial evidence of the witness's own unreliability that is known by the arresting officers could

17

outweigh the identification such that probable cause would not exist." Wilson v. Russo, 212 F.3d 781,790 (3d Cir. 2000). Plaintiff, however, has presented no evidence that the arresting officer knew of any substantial evidence of the witness/victim's unreliability.

Accordingly, defendants argue that the witness/victim's statement provided by Skipalis regarding the incident of December 19, 2015, including that plaintiff broke into her home, threatened her and physically accosted her is sufficient to establish probable cause for the criminal charges and thus plaintiff's claim of malicious prosecution fails.

Plaintiff does not challenge most of defendants' legal analysis or that Farver would have generally had probable cause to arrest someone under these circumstances.[6] Rather, he argues that probable cause is negated by the

---

[6] It appears that Skipalis's statement provides probable cause for each of the crimes charged, the elements of which are as follows:

18 Pa. C.S. § 3503 (a)(1)(i) – Criminal trespass, enter structure
**(a) Buildings and occupied structures –**
    (1) A person commits an offense if, knowing that he is not licensed or privileged to do so, he:
        (i) enters, gains entry by subterfuge or surreptitiously remains in any building or occupied structure or separately secured or occupied portion thereof[.]

18 Pa. C.S. § 2706A (1) – Terroristic threats
**(a) Offense defined.** - - A person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to:
    (1) commit any crime of violence with intent to terrorize another[.]

18 Pa. C.S. § 2701(a)(1) – Simple assault (Janelle Skipalis)

18

involvement of Defendant Balogh who allegedly used his influence and position to have criminal charges filed against the plaintiff.[7]  "Plaintiff asserts that his theory of the case as to Balogh's influence in ensuring criminal charges were prosecuted against Mr., [sic] Caban, evidences that there was a lack of probable cause for the Plaintiff's arrest, which rather was based upon personal interest, malice and for the financial gain of Balogh's niece, Janelle Skipalis."  (Doc. 33, Pl's Surreply Br. at 4).

Even when viewed in the light most favorable to him, however, the evidence of record fails to raise a genuine issue of material fact.  The facts of

---

**(a) Offense defined.**  - - Except as provided under section 2702 (relating to aggravated assault), a person is guilty of assault if he:
    (1) attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another[.]

18 Pa. C.S. § 2705 – Recklessly endangering another person (Janelle Skipalis)
    A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury.
18 Pa. C.S. § 2701(a)(1) – Simple assault - attempt (JI – Skipalis's three-year old son)
**(a) Offense defined.**  - - Except as provided under section 2702 (relating to aggravated assault), a person is guilty of assault if he:
    (1) attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another[.]
18 Pa.C.S. § 2709(a)(1) – Harassment
**(a) Offense defined.**  - - A person commits the crime of harassment when, with the intent to harass, annoy or alarm another, the person;
    (1) strikes, shoves, kicks or otherwise subjects the other person to physical contact, or attempts or threatens to do the same;

[7] Plaintiff argues that it is relevant that a jury found plaintiff not guilty of the criminal charges. The "not guilty" verdict is relevant as to meeting one of the elements of malicious prosecution and false arrest.  Otherwise, the verdict does not reflect on the likeliness that any of the disputed facts are more likely true or not.

record reveal that Defendant Balogh arrived first on the scene of the incident before the police.  He telephoned 911 and signed Skipalis's written statement as a witness.  As discussed in the previous section, no evidence suggests that he used his influence to have the charges brought against the plaintiff and these bare facts are insufficient to negate the probable cause that Patrolman Farver had in charging the defendant.

The law provides that "the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment.  …  even where the evidence is likely to be within the possession of the defendant, as long as the plaintiff has had a full opportunity to conduct discovery.  …  [T]he plaintiff, to survive the defendant's motion, need only present evidence from which a jury might return a verdict in his favor. If he does so, there is a genuine issue of fact that requires a trial."  Anderson, 477 U.S. at 257.  Moreover:

> If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict— whether there is evidence upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.

20

Id. at 252 (internal quotation marks, editing marks and citation omitted).

Plaintiff indicates that a conspiracy as he alleges is difficult to prove, except with circumstantial evidence, unless one of the co-conspirators speaks out.  Here the material fact that plaintiff attempts to raise is whether a conspiracy existed against the plaintiff orchestrated by Defendant Balogh.  Plaintiff fails to provide any foundational facts that could support his position.  For example, plaintiff indicates that Defendant Balogh is a Luzerne County Detective.  He provides no evidence, however, regarding the significance of this position.  He does not indicate whether such detectives work closely with the police generally to press charges against individuals.  He does not indicate how long Balogh worked as a detective or whether he knew Patrolman Farver.  He does not indicate for how long they knew each other or if they had worked together at any point previously.  He claims that Defendant Balogh engaged in malicious prosecution to financially benefit his niece.  However, he presents no evidence regarding the value of the ring at issue (aside from his own assertion) or whether Defendant Balogh knew the value of the ring that plaintiff was evidently trying to repossess.

Several times plaintiff highlights the fact a criminal jury has already heard the facts of this case and unanimously acquitted the plaintiff of any criminal wrongdoing.  (See, e.g., Doc. 33 at 3).  He argues that Skipalis's statement

21

should not be considered because it is self-serving and a Luzerne County jury rejected it in finding plaintiff not guilty. (Doc. 29, Resp. to S.OF. at ¶ 7). As noted above, the fact that a jury acquitted plaintiff, however, has no relevance with regard to the court's probable cause analysis. Wright v. City of Philadelphia, 409 F.3d 595, 602 (3d Cir.2005) (citing Michigan v. DeFillippo, 443 U.S. 31, 36 (1979)).

Legally, the acquittal establishes one of the elements of malicious prosecution and one of the elements of false arrest, that is that the criminal proceedings ended in plaintiff's favor. But plaintiff cites to no cases, and our research has uncovered none, which hold that the jury's acquittal is otherwise relevant factually. It would be up to a new civil jury to determine the facts of the case and judge the credibility of the witnesses. That jury would not be bound by the fact that a jury acquitted plaintiff in the criminal trial.

Defendants have presented evidence that probable cause existed on the night of the incident for plaintiff's arrest. Plaintiff has not countered this evidence. Accordingly, the court finds that the defendants have established that probable cause existed for plaintiff's arrest, and the malicious prosecution claim fails as a matter of law.[8]

---

[8] Plaintiff points to some other ultimately improper material in support of his position. He has the "testimony" of Antonio Mannino who went to the police station on the night of plaintiff's arrest. Mannino allegedly heard Patrolman Farver state that the charges were "no big deal"

## II.  Count II – False Arrest

The second count of plaintiff's complaint asserts a cause of action for false arrest pursuant to the Fourth Amendment to the United States Constitution and Section 1983.  (Doc. 1, ¶¶ 45-52).

To establish such a false arrest claim, the plaintiff must demonstrate:

1) that there was an arrest; and

---

and that "we'll take care of it at the preliminary hearing."   (See Doc. 28, Pl.'s Br. at 17). Mannino also overheard a conversation between Patrolman Farver, plaintiff, and plaintiff's attorney at plaintiff's preliminary hearing.  Patrolman Farver told the other two that if plaintiff pled guilty to a summary offense the remainder of the charges would be dropped.  (Id.) However, when the assistant district attorney arrived she told plaintiff's attorney and Patrolman Farver that she would not agree to a plea to a summary offense.  (Id.)  This witness did not hear Defendant Balogh say anything, but he stated that Defendant Balogh and the assistant district attorney "arrived together" to the preliminary hearing.  (Id.)

These additional facts are not presented as proper summary judgment evidence.  They are contained in an answer to Interrogatory No. 2 of Plaintiff's Responses to Defendants' Second Set of Interrogatories.  No affidavit, declaration or deposition testimony from Mannino is otherwise presented.  It is merely a statement presented in the response which is signed by plaintiff's attorney.  According to the Comment to Rule 56, "When interrogatory answers are used at summary judgment, **most of the time they are used against the party who gave the answer**. However, because an interrogatory answer is verified by the party making it, it is a sworn statement which, like an affidavit or a verified pleading, can be used at summary judgment by the person who made it." FED.R.CIV.P. 56 Comment (emphasis added) see also FED.R.CIV.P 33(b)(3) ("Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath.").  Here, plaintiff attempts to use his own answer to interrogatories, which include the statement from another witness, but is not verified or sworn to.  (See Doc. 29-2, Pl. Exh. B., Ans. To Second Set of Inter. (not sworn to by plaintiff but "Respectfully submitted" by plaintiff's counsel).  Moreover, plaintiff could not swear to or verify this statement because it is made by someone else.  Basically, the answer to the Interrogatory is a response indicating plaintiff has a witness who will say this.  However, at the summary judgment stage, actual evidence is needed.  Here, there is no evidence provided from this witness himself, and the court will not consider this material.  Even if the court did accept this evidence, it would have no impact on the finding that probable cause existed for plaintiff's arrest.

23

2) that the arrest was made without probable cause.

James v. City of Wilkes-Barre, 700 F.3d 675, 680 (3d Cir. 2012).

Because this cause of action fails if the officer had probable cause for the arrest, it will be dismissed for the reasons set forth above with regard to malicious prosecution in section I.b above.  Plaintiff has not demonstrated that the arrest was made without probable cause.

## III.  Count III - Failure to adequately train and supervise

The third count of plaintiff's complaint asserts a cause of action pursuant to § 1983 against the Luzerne County District Attorney's Office for failing to adequately train and supervise Defendant Balogh.

Where a plaintiff seeks to hold a local governmental entity, such as a district attorney's office, liable under § 1983, he "must prove that 'action pursuant to official municipal policy' caused [his] injury." Connick v. Thompson, 563 U.S. 51, 60-61 (2011) (citing Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 691 (1978)).  "Official municipal policy includes the decision of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Id. at 61.

Here, plaintiff alleges that the District Attorney's Office failed to properly train and supervise its employees.  The Supreme Court has held that "[o]nly where a municipality's failure to train its employees in a relevant respect

24

evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." <u>City of Canton v. Harris</u>, 489 U.S. 378, 389 (1989). Further, "[w]hen a plaintiff alleges that a municipality has not directly inflicted an injury, but has caused an employee to do so, stringent standards of culpability and causation must be applied to ensure that the municipality in a § 1983 suit is not held liable solely for the conduct of its employee." <u>Reitz v. County of Bucks</u>, 125 F.3d 139, 145 (3d Cir.1997). These strict standards exist because "in enacting § 1983, Congress did not intend to impose liability on a municipality unless *deliberate* action attributable to the municipality itself is the 'moving force' behind the plaintiff's deprivation of federal rights." <u>Board of the County Commissioners of Bryan County, Oklahoma v. Brown</u>, 520 U.S. 397, 399 (1997) (emphasis in original).

Such a claim presupposes that a municipal employee, such as Defendant Balogh, violated someone's rights.  As set forth above, plaintiff has not established that Defendant Balogh violated his rights.  Therefore, this derivative claim of failure to train and supervise also fails.  Judgement will be granted to Defendant the Office of the District Attorney of Luzerne County on this count.

**IV.  Count IV - Defamation**

The final count remaining in plaintiff's case is a claim for defamation.  This claim is made under Pennsylvania state law.  (Doc. 1, Compl. ¶¶ 61-68).  If federal claims are dismissed prior to trial, the pendent state law claims also should be dismissed.  United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); Coudriet v. Vardaro, 545 Fed. App'x 99, 105 n.7 (3d Cir. 2013) (per curiam).  Accordingly, the plaintiff's defamation claim will be dismissed, without prejudice to him pursuing that cause of action in an appropriate state forum.

**Conclusion**

For the reasons set forth above, the court finds that plaintiff has raised no genuine issue of material fact as to whether Patrolman Farver initiated the criminal proceedings or possessed probable cause for plaintiff's arrest. Therefore, judgment will be granted to the defendants on the plaintiff's federal claims for malicious prosecution and false arrest.  The failure to train and supervise claim also fails as no underlying constitutional violation has been found.  The plaintiff's pendent state law claim for defamation will be denied without prejudice.  An appropriate order follows.

Date: _____


_____
**JUDGE JULIA K. MUNLEY**
**United States District Court**